## ORR VS. THE STATE.

The act of 22d January, 1855, intended, doubtless, to dispense with the necessity of stating, in an indictment under the 8th section of the Gaming Act (*Digest* 367,) the names of the persons by whom the game was played. (*The State vs. Parnell,* 16 *Ark.* 506; *Medlock vs. State, ante.*)

Several counts for distinct offences, being misdemeanors, of the same nature or class, and subject to the same judgment, may be joined in one indictment.

The mode of examining a witness, who is personally present at the trial, is very much under the control and sound discretion of the presiding judge; and no objection can be perceived to the general question whether the witness had seen the defendant play the game charged in the indictment at any time within twelve months, etc.

Where a person is indicted for betting at any *game of cards* embraced by the provisions of the 8th section of the Gaming Act, (*Digest* 367,) it is sufficient to charge the betting on a game of cards, naming the game; and it is not necessary to charge that the game of cards named is a game of hazard or skill; but if so charged, it will be considered as surplusage and need not be proved.

But where a person is indicted for betting on a game not embraced within the 8th section, but embraced by the 2d section of the act of January, 1855, it is necessary, it would seem, to charge the game bet upon as one of *hazard* or *skill*.

*Appeal from Marion Circuit Court.*

The Hon. WILLIAM C. BEVENS, Circuit Judge.

JORDAN for the appellant.

JOHNSON, Attorney General.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

James Orr was indicted in the Marion Circuit Court for gaming. There were two counts in the indictment. The first count charged: " That James Orr, late of, etc., on, etc., at etc., unlawfully did bet a large sum of money, to wit: the sum of one dollar, on an unlawful *game* of *hazard* commonly called *pocre*, then

and there *played with cards*, contrary to the form of the statute," etc.

The second count charged: "That James Orr, etc., on etc., at, etc., unlawfully did bet a large sum of money, *to wit:* the sum of one dollar, on an unlawful *game* of *skill* called *draw pocre*, then and there *played* with *cards*, contrary," etc., etc.

The indictment was found at the April term, 1856.

The defendant filed a motion to quash the indictment for alleged want of certainty in the description of the offence, etc., which the Court overruled.

The defendant then moved the Court to compel the State to elect upon which count in the indictment she would put him upon trial, alleging as grounds of the motion that in each count a separate and distinct offence was charged. In support of the motion, the defendant introduced as a witness, one *Wm. Coker L.*, who professed to be skilled in the matter, and who testified that *pocre* and *draw pocre* were distinct and different games at cards, and stated the manner of playing each, and the difference between them. But the Court, after hearing his statement, overruled the motion.

The defendant then pleaded not guilty, and the case was submitted to a jury. The State introduced *Wm. Coker L.*, as a witness on her part, and the Prosecuting Attorney asked him " if he had seen the defendant bet money on a game of *pocre* or a game of *draw pocre* at any time within one year next before the finding of the bill of indictment in this case, in the county of Marion and State of Arkansas?"

To which question the defendant objected upon the ground " that there was no identity of the offence in the indictment, and that the State should be required to confine the enquiry to some one transaction, and not be permitted to fish through the whole year, and through the county, and with every person, to make out an offence against the defendant."

But the Court overruled the objection, and permitted the witness to answer the question.

Thereupon, the said *Wm. Coker L.* testified that he was acquainted with the defendant, and had seen him bet money on

a game of *pocre* played by Robert E. Trimble, Davis R. Lutt, jr., and the defendant, in the county of Marion, State of Arkansas, within one year next before the finding of the bill of indictment in this case. Which was all the testimony introduced.

The defendant moved the Court to instruct the jury as follows:

" 1. That, as it was alleged in the indictment that it was a game of *hazard*, it must be proved that it was a game of *hazard*, in order to authorize a conviction.

·' 2d. That unless they are satisfied from the evidence that the defendant did bet on a game of *hazard* called *pocre* in the county of Marion, within one year next before the finding of the bill of indictment they should find for the defendant

" 3d. That if the jury are satisfied the defendant did bet money on a game of *pocre* within the county and within one year before the finding of the bill, unless they also find from the evidence that said game of pocre was a game of *hazard*, they should find for the defendant."

Which instructions the Court refused to give, but upon its own motion charged the jury " that if they found from the evidence that the defendant bet money on a *game* called *pocre*, within this county, within one year next before the finding of the bill of indictment, they should find the defendant guilty, and assess his fine at whatever sum they thought proper between ten and twenty-five dollars."

The jury returned a verdict against the defendant of "guilty in manner and form as charged in the indictment," and assessed his fine at *ten dollars*.

The defendant excepted to the several decisions of the Court above indicated, and took a bill of exceptions setting out the facts; and appealed to this Court.

1. The only objection made to the form of the indictment by the counsel for the appellant here, is, that it does not set out the names of the persons by whom the game at cards, upon which the appellant was charged with betting, was played; citing *Barkman vs. The State*, 13 *Ark.* 704, etc.

In the case cited, and in a number of previous cases, this Court held that in an indictment under the 8th section of the Gaming Act, (*Dig. p.* 367,) it was necessary to set out the names of the persons by whom the game was played, as matter of description of the offence, and that the proof must correspond with the allegation. But this rule was found to be so inconvenient in practice, that the General Assembly, by act of 22d January, 1855, intended, doubtless, to dispense with the necessity of stating the names of the persons by whom the game was played. *The State vs. Parnell,* 16 *Ark.* 506. *Medlock vs. The State,* present term. Though such intention as to games embraced by the section of the Gaming Act above referred to, is not clearly expressed.

The Court did not err, therefore, in refusing to quash the indictment.

2d. Nor did the Court err in refusing to compel the State to elect upon which of the two counts of the indictment she would put the appellant on trial. If *pocre* and *draw pocre* be really distinct and different games, and the indictment intended to charge the appellant with two distinct offences, one in each count, the offences both being misdemeanors of the same nature or class, and subject to the same judgment, the State had the right to join them in one indictment, and the appellant had no right to compel the Prosecuting Attorney to make an election, etc. 1 *Chitty's Cr. Law, p.* 253–'4.

3d. The objection made by the appellant's counsel to the question put by the State to the witness *Wm. Coker L.* is that it was too general, and not sufficiently specific. No authority is cited to sustain the objection. It is not insisted that the question was a leading one; nor can we conceive how the appellant could have been prejudiced by such a general inquiry of the witness. The mode of examining a witness, who is personally present at the trial, is very much under the control and sound discretion of the presiding Judge, so that questions be not leading, etc. *Pleasant vs. The State,* 15 *Ark.* 649.

4. The only remaining question is, did the Court err in re-

fusing to instruct the jury as moved by the appellant, that the State was bound to prove that *pocre* was a game of *hazard?*

The 8th section of the Gaming Act is as follows:

" If any person shall be guilty of betting any money or other valuable thing, on any game of brag, bluff, pocre, seven up, three up, twenty-one, vingtun, thirteen cards, the odd trick, forty-five, whist, *or at any other game at cards*, known by any name now known to the laws, or with any other or new name, or without any name, he shall, on conviction, be fined in any sum not less than ten dollars, nor more than twenty-five dollars." *Dig. ch.* 51, *part* 8, *art.* 3, *sec.* 8, *p.* 367.

The first section of the Gaming Act relates exclusively to what are known as banking games, etc.; and the 8th section provides for the punishment of betting on *games at cards* only. And hence, it was held by this Court in *Norton vs. The State*, 15 *Ark.* 71, that it was no offence to bet upon a *raffle;* and in *The State vs. Hawkins, Ib.* 259, it was decided that betting at *rondo* was not an offence within the provisions of either section of the Gaming Act.

The act of 22d January, 1855, which was passed after these decisions were made, is as follows:

" Sec. 1. If any person shall be guilty of betting any money or any valuable thing on any *game* of *hazard* or *skill*, he shall, on conviction, be fined as prescribed in *sec.* 8, *art.* 3, *chap.* 51, *title Criminal Law*, of the Digest of the Statutes of Arkansas.

" Sec. 2. In prosecuting under the preceding section, it is sufficient for the indictment to charge that the defendant bet money, or other valuable thing, on a game of hazard or skill, without stating with whom the game was played."

The 8th section of the Gaming Act embracing nothing but betting on games *played with cards*, it was manifestly the intention of the 1st section of the act of 22d January, 1855, to enlarge the prohibition against betting, and to extend the penalty of the 8th section of the Gaming Act to betting on any game of *hazard* or *skill*, except the banking games, etc., embraced by the first section, etc., of the Gaming Act.

Where a person is indicted for betting at any *game of cards*

embraced by the provisions of the 8th section, it is sufficient for the indictment to charge the betting on a game of cards called *pocre, seven up*, etc., naming the game of cards, if it has any, etc. But it is not necessary to charge that the particular game of cards named is a game of *hazard* or *skill*.

But where a person is indicted for betting on a game not embraced within the 8th section, but embraced by the 1st section of the act of January, 1855, it is necessary, it would seem, to charge the game bet upon to be one of *hazard* or *skill*, as provided by the 2d section of the act last referred to. See *State vs. Grider*, present term.

In the indictment now before us, the first count charges the betting upon a *game at cards called pocre*, and the second count charges the betting upon *a game at cards called draw pocre*. Both of these games are clearly embraced by the 8th section of the Gaming Act, and it was, therefore, wholly unnecessary for the indictment to charge, as it did, that the first was a game of *hazard*, and the second a game of *skill*. These words of description, in this indictment, were merely surplusage.

Being surplusage, it was not necessary for the State to prove it. 1 *Chitty's Cr. Law, p,* 295, *and cases cited in Note* 1, 5*th American, from the* 2*d London Edition..*

The judgment is affirmed.

Absent, Hon. C. C. Scott.